## 17649

STATE, Respondent, v. Walter M. CAVERS, Appellant

(114 S. E. (2d) 401)

306

*Messrs. C. T. Graydon, A. T. Graydon,* and *Harold Boul-ware,* of Columbia, *for Appellant,*

*George* F. *Coleman, Esq., Solicitor,* of Winnsboro, *for Respondent,*

*Messrs. C. T. Graydon, Augustus T. Graydon* and *Harold Boulware,* of Coulmbia, *for Appellant, in Reply,*

May 3, 1960.

STUKES, Chief Justice.

As the result of a fatal traffic accident the appellant was indicted upon two counts, (1) murder, and (2) reckless homicide, the latter being statutory, Section 46-341, Code of 1952. *State v. McCracken,* 211 S. C. 52, 43 S. E. (2d) 607; *State v. Rachels,* 218 S. C. 1, 61 S. E. (2d) 249; *State v. Phillips,* 226 S. C. 297, 84 S. E. (2d) 855. Upon trial involuntary manslaughter was submitted to the jury under the first count, as was reckless homicide under the second. The jury returned verdict of guilty of reckless homicide and appellant was sentenced to imprisonment for three years. He appeals and submits questions which will be considered *seriatim* after brief statement of the facts.

Appellant was driving a new Lincoln automobile from Charlotte and collision occurred with decedent's automobile within the corporate limits of the town of York, at the intersection of North Congress and Kings Mountain Streets, which caused the immediate death of decedent. Appellant was driving south on North Congress and decedent, who had been driving north, was turning from that street, to the left, into Kings Mountain Street. The collision occurred on appellant's right side of the street, and decedent's left. The accident happened about 5:40 P. M. on March 18, 1958, at or near twilight and after it had been raining earlier so that the pavement was partially wet. Appellant's car left skid marks, showing application of the brakes, for a distance

of 91 feet to the point of impact. By the force of it decedent's car was pushed sideways for a distance of 51 feet; appellant's car came to rest 38 feet forward from the point of collision. The street was straight and from appellant's approach the intersection was visible for a distance of 314 feet. Both cars were badly crushed and damaged, indicating the effect of at least considerable force.

The excessive speed of appellant's car was the gist of the *State's case*. Several State's witnesses testified as to it. Some of them met appellant as he approached the intersection and complaint is made, by appellant's first question, that their points of observation were too distant to be admissible. It was about one and one-half miles from the intersection that the most distant witness met appellant and was so frightened by the latter's speed that he drove off the highway to avoid the possibility of collision. Another witness nearer the intersection did the same. One of them estimated appellant's speed at 90 miles per hour. They were terrorized at his approach. Other witnesses testified as to speed closer to the point of collision so that all of the evidence was connected and tended to show continuity of excessive speed. However, we need not consider whether the evidence which was objected to should have been excluded because in each instance appellant's counsel cross examined the witness concerning his testimony on direct examination without reservation of the objection. It was thereby lost and, if error it was cured. 18 S. C. Dig., Trial, 412, p. 236. Of interest is an annotation in 46 A. L. R. (2d) 9 entitled, "Admissibility, in action involving motor vehicle accident, of evidence as to manner in which participant was driving before reaching scene of accident."

Appellant points out that these witnesses did not positively identify him or his car. But they testified that it was a two-toned Lincoln which they saw speeding on the highway toward the point of collision, driven by a colored man, and at a time immediately before the accident. We think that these circumstances made the testi-

mony competent and the weight of it was for the jury. They were fully instructed by the court with respect to circumstantial evidence. Appellant, who is a Negro, admitted that he and his two-toned Lincoln car were involved in the fatal collision. Annotation, 46 A. L. R. (2d) 29.

Further complaint is made of the admission in evidence of the testimony of a State's witness who was in his yard about 300 feet from the collision and testified that, quoting, "I heard a car come by at a high rate of speed, and in my opinion in just almost a split second I heard this very loud brakes being applied, and the impact and I went out to the street and saw that there was a wreck, and I went down to see what I could do about it." Whether a witness may testify to his conclusion of high speed from the sound of the vehicle is an interesting question. Annotation, 156 A. L. R. 387, c. Here there was more than the sound of the vehicle—the noise caused by application of the brakes and by the virtually instantaneous collision. However, we need not consider it because, again, the witness was cross examined at length by defendant's counsel and substantially the same evidence elicited, without reservation of his former objection.

Appellant's second question asserts that the only reasonable inference from the evidence is that decedent's negligence and recklessness was *the* proximate cause of the collision; we take the contention to be that it was the sole proximate cause. We do not think so, in view of the evidence of high and unlawful speed of appellant. About two-tenths of a mile from the intersection there is a traffc circle where there is a posted speed limit of twenty miles per hour although a State's witness testified that he had once negotiated it out of necessity with a truck at fifty miles per hour. The speed limit at the scene of the collision, which was a residential section, was 35 miles per hour and a 35 mile per hour sign was posted at the city limits. Inferably, appellant reduced his speed temporarily to pass through the traffic circle and resumed it immediately. It is within common knowledge that powerful automobiles

accelerate rapidly. The Lincoln here was of 375 horsepower. Contributory negligence is not a defense in such a case as this. It is sufficient to convict if defendant's recklessness is a contributing proximate cause. *State v. Caldwell,* 231 S. C. 184, 98 S. E. (2d) 259. On appeal the evidence must be considered in the light most favorable to the State. 7 S. C. Dig., Criminal Law, 753 (2), p. 549. We have no difficulty in concluding that the evidence was ample to sustain the conviction. We quote with approval from the ruling from the bench by the trial judge on appellant's post verdict motion:

"When one looks at the entire picture, it is inescapable that the Lincoln automobile was being driven at an extremely rapid rate of speed at an important intersection in the Town of York not too distant from the heart of the business section. I think there is one thing in the case, gentlemen, that speaks out in the matter of speed. In a circumstantial evidence sort of way, it speaks out more loudly than anything else, and that is this: The testimony shows the Lincoln automobile skidded 91 feet, and at the end of the 91 foot slide or skid it was still traveling with sufficient impact to stop the Buick automobile, reverse its direction, and push it back down the street a distance of approximately 55 feet, and I think that the circumstantial evidence as to speed in and of itself makes it inescapable that the speed could be considered not only negligence, but recklessness."

Without citation of authority, appellant contends in ▮▮ his third question that the State should have been required to elect between involuntary manslaughter and reckless homicide. It is not supported by logic. It was within the province of the jury to find whether appellant's conduct was negligent or reckless, or neither; if negligent, it would have supported a verdict of guilty of manslaughter, the court having eliminated murder and voluntary manslaughter; if reckless, it sustains the verdict of guilty of reckless homicide, and that finding by the jury is implicit in the verdict. *State v. Barnett,* 218 S. C. 415, 63 S. E. (2d)

57. *State v. Phillips, supra,* 226 S. C. 297, 84 S. E. (2d) 855. The jury were instructed that they could not find appellant guilty on both counts. To sustain this point of appellant would require the court, instead of the jury, to determine whether his conduct was negligent or reckless, if either, which, under the evidence in this case, would be an invasion by the court of the province of the jury. The State cannot be required to elect between counts in an indictment when they charge offenses of the same character and refer to the same transaction, whether or not one charges a common law offense and another a statutory offense. *State v. Lee,* 203 S. C. 536, 28 S. E. (2d) 402, 149 A. L. R. 1300; *State v. Whitener,* 228 S. C. 244, 89 S. E. (2d) 701.

As his fourth question appellant complains of the ■ charge to the jury as to the degree of negligence or recklessness required for conviction. The exception to this count relating to the charge is, "That the trial judge erred in failing to charge that the State must prove the negligence of the defendant beyond a reasonable doubt." Consideration of the charge is convincing that it was full and free from error. At four places in it, after charging the presumption of the innocence of the appellant, the jury were instructed as to the necessity for conviction of proof of guilt beyond a reasonable doubt. Tr. ff. 438, 439, 476, 482. We quote from folio 439: "On the other hand, in order to warrant a conviction, the State by bringing the case assumes the burden of proof, and in order to warrant a conviction, the State must prove its case, and all of the elements of the case, to your satisfaction beyond a reasonable doubt, and if the State so proves its case, you should convict. On the other hand, if the State fails to so prove its case, you should acquit."

Finally, as his fifth question appellant contends that ■ ■ he was prejudiced by portions of the argument of the Solicitor to the jury. Defense counsel interrupted and objected to the following argument of the Solicitor: "If you write a verdict of 'Not Guilty' for him, you are going

to say to him, 'Preacher from Charlotte, we have written a verdict of not guilty for you, and we want you to come back down to our county and visit us often. You have got some churches here that you serve. We want you to come back down here and visit us as often as you like, and when you come down here to see us, we want you to drive your big Lincoln automobile just like you drove it on the 18th day of March 1958.' That is what you are going to tell him." The objection was overruled by the court who commented that the jury would know what weight, if any, to give to the argument, and turning to the jury the court reminded them that it was the argument of counsel and not evidence in the case. We agree that no prejudice to appellant appears. Another portion of the argument of the Solicitor is reproduced in the record, of which appellant now complains. However, there was no objection to it, and it need not be considered. Moreover, no exception to this court relates to it.

Affirmed.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.